AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

FILED
United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Motorola, model XT2043-4, International Mobile Equipment Identity (IMEI) 352801342103822 | ) ) ) ) ) ) Case No. 21-MR-1158 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See attachment A

located in the _____ District of ___New Mexico___, there is now concealed *(identify the person or describe the property to be seized)*:

See attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 2113 and 2 | Bank robbery and aiding and abetting |

The application is based on these facts:
See attached affidavit

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ *Applicant's signature*

Jordan Spaeth, FBI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by ~~tlephonically/electronically~~ *(specify reliable electronic means)*.

Date: 8/11/21

City and state: Albuquerque, New Mexico

Steve Yarbrough
Steven Yarbrough, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

### INTRODUCTION

1. I, Jordan Spaeth, Special Agent of the Federal Bureau of Investigation ("FBI"), being first duly sworn, make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property, described as a Motorola, model XT2043-4, International Mobile Equipment Identity (IMEI) 352801342103822, as described in Attachment A ("TARGET PHONE")—which is currently in the lawful custody of the FBI, and the extraction from that property of electronically stored information described in Attachment B.

2. The TARGET PHONE was seized by the FBI and collected as evidence pursuant to the arrest of GUTIERREZ on June 30, 2021, as part of the on-going criminal investigation into the BBVA Bank robbery, which was executed on June 15, 2021 at the BBVA Bank, located at 3500 Candelaria Road Northeast, Albuquerque, New Mexico, 87107. The TARGET PHONE is currently located at the FBI Albuquerque Field Office, 4200 Luecking Park Avenue Northeast, Albuquerque, New Mexico. In my training and experience I know that the TARGET PHONE has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as it was when the TARGET PHONE first came into the possession of the FBI.

3. The applied-for warrant would authorize the forensic examination of the TARGET PHONE for the purpose of identifying electronically stored data particularly described in Attachment B. This application seeks a warrant authorizing law enforcement officers working this investigation to search all responsive records and information associated with the TARGET PHONE for evidence pertaining to violations of 18 U.S.C. §§ 2113 and 2, described as bank robbery and aiding and abetting.

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

4. The specific evidence being sought has been detailed within Attachment B, which has been attached hereto and incorporated herein. This affidavit does not set forth all of my knowledge or summarize all of the investigative efforts in this matter; however, the affidavit sets forth only the facts that support probable cause to search the TARGET PHONE, as well as relevant background information. Any observations referenced herein that I did not personally witness were relayed to me in oral or written reports by members of the investigative team, who assisted during this investigation, which remains open.

5. During my investigation, I have developed information I believe to be reliable from the following sources:

   a. New Mexico Corrections Department ("NMCD");
   b. Other law enforcement officers (also referred to herein as "agents" or "investigators"), including oral and written reports;
   c. Citizen witnesses;
   d. Results of physical surveillance; and
   e. Records from the FBI National Crime Information Center ("NCIC"), New Mexico Courts, and the New Mexico Motor Vehicle Division ("MVD").

## AFFIANT'S RELEVANT TRAINING AND EXPERIENCE

6. I am a Special Agent with the FBI and have been a sworn law enforcement officer for more than 12 years, serving as a police officer and FBI Special Agent. I have been with the FBI since 2018 and am currently assigned to the Albuquerque Violent Crime and Gang Task Force ("VCGTF") and the FBI Albuquerque's Indian Country program. As a member of the VCGTF, I investigate violent gangs who are primarily comprised of violent repeat offenders engaged in narcotics trafficking, federal firearms violations, other violent crime; and bank robbery. As a

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

member of the Indian Country program, I investigate serious felonies to include, but not limited to, homicide, child sexual assault, arson, and assault on federal officers, which occur within the exterior boundaries of the multiple Indian Reservations surrounding Albuquerque, New Mexico.

7. My investigative training and experience includes, but is not limited to, interviewing subjects, targets, and witnesses, writing affidavits for, and executing search and arrest warrants, collecting evidence, conducting surveillance, and analyzing public records. Over the course of my career, I have arrested hundreds of persons for offenses relating to armed robberies, firearm violations, bank robberies, illegal narcotics, and other criminal conduct. I have also been responsible for serving subpoenas and supervising cooperating sources, as well as analyzing phone records.

8. Through my training and experience, I am aware that individuals, bank robbers, and gang/criminal enterprises utilize cellular telephones, similar to the TARGET PHONE, to further their criminal activities.

9. Based upon my training, experience, and participation in the investigation of gang/criminal enterprises and bank robberies, I am aware individuals engaged in this criminal activity maintain documents, letters, and records relating to their crimes. This documentary evidence is usually secreted in their place of residence, or the residences of family members, friends, or associates, in their business locations, or in stash houses; and may be included on cellular phones, similar to the TARGET PHONE. This documentary evidence may include telephone numbers, telephone books, address books, travel receipts, records in fictitious or coded names, false identification, money order receipts, money orders, money remittance receipts, pre-paid money cards such as MoneyPak, Green Dot, or other debit cards, bulk United States currency, money collection logs, such as "tally" sheets, drug load sheets, or shipping/mailing receipts.

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

10. I know members and associates involved in criminal activity have access to, and often utilize, numerous cellular phones, often at the same time in an effort to avoid law enforcement monitoring. I have observed persons involved in drug trafficking and bank robberies use messaging applications and pre-paid phones requiring no subscriber information, and even use fictitious names, or the names of others, to register the cellular phones used to advance their unlawful activities. These cellular telephones often contain names and phone numbers of other co-conspirators, text messages utilized to further illicit activities, photographs and videos of controlled substances, drug proceeds, and/or firearms. In addition, I am also familiar with the use of text messaging, instant messaging, and similar applications, used by gang/criminal enterprises to advance their unlawful activities. I am aware such messaging applications can be utilized from computers and certain applications can send messages that appear to be cellular telephone text messages.

## **FACTS AND CIRCUMSTANCES ESTABLISHING PROBABLE CAUSE**
## **ROBBERY OF BBVA BANK**

11. On July 15, 2021, a little before closing, a robbery was committed at the BBVA Bank, located at 3500 Candelaria Road Northeast, Albuquerque, New Mexico. After reviewing the facts, witness statements, and surveillance images, I believe GUTIERREZ and an accomplice committed the robbery.

12. According to witness statements and surveillance video, two males entered the bank minutes before closing and approached the teller counter. The second male, later identified as GUTIERREZ, was described as mid-30s, medium to heavy build, wearing sunglasses, dark gloves, dark denim jacket, dark bandana with the jaws of a skull painted on it covering the lower part of his face, black shoes, blue jeans and standing approximately 5'08"-5'09". Video footage also

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

shows very distinct moles/marks are visible on the side of GUTIERREZ's nose, eyebrow, and cheek.

13. There were three employees working at the time of the robbery, to include teller J.Q., teller D.F., and manager D.R. There were no customers inside the bank at the time of the robbery. As GUTIERREZ and his accomplice entered the bank, D.F. was in the bathroom. The male accomplice made his way behind the counter, approached J.Q. and directed GUTIERREZ to, "Stay here and wait for the guy in the bathroom." Once behind the counter, the male accomplice demanded money from J.Q. The accomplice began banging around and pulling on teller drawers while he repeated, "Give me the money!" and "Where's the money BITCH!" J.Q. pointed to a drawer, the male offender opened the drawer, removed a sum of United States Currency, and left the bank with GUTIERREZ.

14. At approximately the same time as GUTIERREZ and his accomplice left the bank, a neighboring business surveillance camera captured a gold minivan back out of the BBVA bank parking lot and speed away.

15. The bank suffered a financial loss in the robbery. I am aware of the total loss to the bank, however due to the nature of the investigation have not included the amount. The BBVA Bank is insured by the Federal Deposit Insurance Corporation (FDIC), wherefore it is a bank as defined under 18 USC § 2113. Bank employees reported that a dye pack was included in the stacks of cash taken by GUTIERREZ and his accomplice.

## SEARCH AND ARREST WARRANT

16. During the course of the investigation, investigators executed a search warrant at the residence of Carl GUTIERREZ, aka: "WIZARD," for items associated with the BBVA bank robbery. The search warrant was authorized by the Honorable United States Magistrate Judge John

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

F. Robbenhaar, cause number MR-21-1065, and authorized the search of GUTIERREZ's residence, 1913 Coe Road Southwest, Albuquerque, New Mexico.

17. On July 30, 2021, at approximately 0600 hours, agents and task force officers (TFO) from the VCGTF executed the search warrant at GUTIERREZ's residence. Pursuant to the search, investigators located a gold Ford minivan consistent with the minivan referenced in paragraph 16. Inside the gold minivan, investigators located a drawstring bag on the driver's seat with red stain on it. Also, on the passenger seat, investigators located a red stain similar to the stain on the drawstring bag. The bag and red stain on the seat were seized as evidence and later entered into the FBI evidence system. In my training and experience I believe the red stain located on the passenger seat and the draw string bag is consistent with the red dye contained in dye packs.

18. During the course of the investigation, agents spoke with two family members of GUTIERREZ. The two family members identities are known to me; however, I have not included them herein for their protection. Both of the family members have regular contact with GUTIERREZ, knew him to stay at 1913 Coe Road Southwest, Albuquerque, New Mexico, and knew that the gold Ford minivan located on the property belonged to GUTIERREZ. Both family members knew that the gold Ford minivan showed up to the property about two or three weeks prior and one family member had observed GUTIERREZ drive the van. Further, a photograph from BBVA Bank surveillance video of one of the bank robbery suspects (believed to be GUTIERREZ) was shown to both family members and they identified the subject in the photograph as GUTIERREZ.

19. During the search of GUTIERREZ's property, investigators observed him drive by the residence and conducted a traffic stop. During the interaction with agents and TFOs, GUTIERREZ made an excited utterance stating that he knew law enforcement was looking for

Page 6 of 13

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

him because a friend told him that he looked like someone who was posted on the news, someone who was wanted for committing a crime. Investigators attempted to interview GUTIERREZ, but he would not provide a statement without his attorney present.

20. A search incident to arrest of GUTIERREZ's vehicle was conducted and investigators located a small amount of heroin, a needle, and a small amount of methamphetamine; which all field tested positive.

21. Following the above referenced search warrant and law enforcement contact with GUTIERREZ, I am aware that GUTIERREZ was arrested, transported to the United States Marshal's Service and the Honorable United States Magistrate Judge B. Paul Briones authorized a criminal complaint and arrest warrant for GUTIERREZ in violation of United States Code 18 U.S.C. § 2113 and 2, cause number 21-MJ-1080.

## THE TARGET SUBJECT

22. Investigators conducted a National Crime Information Center (NCIC) and a New Mexico Motor Vehicle Department (MVD) check. Agents and investigators observed the MVD photograph of GUTIERREZ. I reviewed GUTIERREZ's criminal history, have viewed booking photographs, and am aware that the address on his current driver's license is 1913 Coe Road Southwest, Albuquerque, New Mexico. Further, a review of GUTIERREZ's driver's license revealed he is listed as standing five feet eleven inches tall and weighing 220 pounds, with brown eyes.

23. I am aware GUTIERREZ has several moles (marks), one on his cheek, eyebrow, and one on his nose. The marks/moles are consistent with marks/moles observed on the bank robber, believed to be GUTIERREZ and the same photograph shown to family members who positively identified the subject as GUTIERREZ.

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

24. On July 27, 2021, agents observed GUTIERREZ outside of his listed residence, 1319 Coe Road Southwest, Albuquerque, New Mexico. The body shape and gate of GUTIERREZ match that of the subject observed on BBVA Bank security camera footage.

25. Investigators compared the second subject in the surveillance video to the door at the entryway of the BBVA Bank and approximate the height of the second subject to be around 5'10" to 6'00" tall.

26. I have reviewed GUTIERREZ's criminal history and am aware he has been arrested 23 times in New Mexico with felony convictions for assault on a police officer and possession of a controlled substance.

## TECHNICAL TERMS

27. Based on my training and experience, I use the following technical terms to convey the following meanings:

28. Cellular telephone: A cellular telephone or mobile telephone is a handheld wireless device used primarily for voice communication through radio signals. These telephones send signals through networks of transmitter/receivers called "cells," enabling communication with other cellular telephones or traditional "land line" telephones. A cellular telephone usually includes a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, cellular telephones now offer a broad range of capabilities. These capabilities include, but are not limited to: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and email; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

29. Digital camera: A digital camera is a device that records still and moving images digitally. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

30. Portable media player: A portable media player (or "MP3" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

31. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The GPS consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

      32.    PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as a wireless communication device and are used to access the Internet and send and receive email. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

      33.    IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of numbers separated by periods (e.g., 121.56.97.178). Every device attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that device may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some devices have static – tat is, long-term – IP addresses, while other computers have dynamic – that is, frequently changed – IP addresses.

      34.    Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

35. Based on my experience, I know that the TARGET PHONE has the capability to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

### ELECTRONIC STORAGE AND FORENSIC ANALYSIS

36. Based on my knowledge and experience, I know that electronic devices can store information for long periods of time. This information can sometimes be recovered with forensic tools.

37. Forensic evidence. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the TARGET PHONES were used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the TARGET PHONES because:

38. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

39. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

40. A person with appropriate familiarity with how electronic devices and electronically stored information work may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices and electronically stored information were used, the purpose of their use, who used them, and when.

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

41. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. For example, whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

42. Further, in finding evidence of how a device and electronically stored information were used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

43. Nature of examination. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Target Phone consistent with the warrant. The examination may require authorities to employ specialized techniques, including but not limited to computer-assisted analyses, that might expose many parts of the Account to human inspection in order to determine whether it is evidence described by the warrant.

44. Manner of execution. Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

### CONCLUSION

45. Based on the information contained herein, I submit there is probable cause for a search warrant authorizing the examination of the TARGET PHONES described in Attachment A to seek the items described in Attachment B for evidence pertaining to violations of 18 U.S.C. §§ 2113 and 2. This affidavit was reviewed by Assistant United States Attorney Niki Tapia-Brito.

Respectfully submitted,

Jordan Spaeth
FBI Special Agent

Subscribed telephonically and sworn electronically on August 11, 2021:

## ATTACHMENT A

*Property to be searched*

The property to be searched is a cellular telephone described as a Motorola, model XT2043-4, International Mobile Equipment Identity (IMEI) 352801342103822, which is currently located at the Federal Bureau of Investigation Albuquerque Field Office, 4200 Luecking Park Ave NE, Albuquerque, New Mexico, 87107. This warrant authorizes the forensic examination of the target phone for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

*Property to be seized*

1. The property to be seized includes all records on the target phone described in Attachment A that relate to violations of Title 18 U.S.C.§§ 2113 and 2, including:

    a. Any communication and information related to the crime of bank robbery;

    b. Any communication and information related to the planning of and/or attempted evasion of law enforcement, relating to the crime of bank robbery;

    c. Any communication and information related to the concealing of, or distribution of, proceeds derived from the crime of bank robbery;

    d. The location of the target phone before, during, and after the July 15, 2021 BBVA Bank robbery;

    e. Any communication relating to the suspected get-away vehicle, described as a gold Ford minivan.

2. Evidence of user attribution showing who used or owned the target phone at the time the things described in this warrant were created, edited, or deleted, such as logs, phone books, saved usernames and passwords, documents, and browsing history. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data)and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and

instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff or their independent review.